MICHAEL MARONEY, *et al.*, Appellants, v. BRIDGET MARONEY, *et al.*

**Resulting Trust:** EVIDENCE. In an action by heirs to recover land, there was evidence that it had been fraudulently conveyed by decedent, and that his administrator had bought it in an execution sale, on a judgment against decedent, while it was in the possession of the fraudulent grantee; that the decree subjecting the land to such judgment did not divest the title of such grantee; that the purchase was made under a verbal agreement with such grantee and one of the plaintiffs and the administrator should hold the land in trust for plaintiffs until the rents should equal the price paid, and should then convey it to the plaintiffs.  It was shown that no part of the price was taken from the decedents' estate, that the value of the land was not materially greater than the price paid, and that the administrator had improved the property and treated it as his own.  *Held*, that a resulting trust did not arise in favor of plaintiffs.

SAME. Under Code, 1934, the above transaction creates an express trust, if it creates any, and hence cannot be established by parol testimony.

*Appeal from Buchanan District Court.*—HON. M. J. WADE, Judge.

SATURDAY, APRIL 11, 1896.

ACTION in equity to recover certain real estate, and for general equitable relief. Certain of the defendants claim to own the land, and ask that the title thereto be quieted in them. There was a hearing on the merits, and a decree for the defendants. The plaintiffs appeal.—*Affirmed.*

*Woodward & Cook* and *Remley & Ney* for appellants.

*Ransier & Everett* for appellees.

ROBINSON, J.—The plaintiffs claim to be the owners of two hundred and forty acres of land, in section 24, in township 88, north of range 7 west. They are the children and heirs of James Maroney, who died in June, 1884. The defendants, who claim the land, are the widow and children of Matthew Maroney. He was the uncle of the plaintiffs, and died in May, 1892. The petition alleges, that Matthew Maroney was the administrator of James; that the plaintiffs were the owners of eighty acres of land in section 10, in the township and range described; that Matthew had the charge of that land after the death of his brother, receiving the rents and profits therefrom; that in January, 1888, one Bridget Ryan, a sister of both James and Matthew, owned and held the lawful title to the land in section 24; that it had been adjudged liable to pay certain judgments against James Maroney, in favor of Mary Boyle, which amounted to about three thousand dollars; that execution had been issued and levied upon the land, and it was about to be sold at sheriff's sale, but it was worth more than the claims against it, and Bridget Ryan desired to give it to the plaintiffs; that it was agreed, between her and Matthew Maroney and one Anthony McKinney, an uncle of the plaintiffs, that the land could go

to sale, and that Matthew should bid it off in his own name, and hold it as trustee for the plaintiffs, and that he should rent it, and pay the taxes, and apply the income and rents on the indebtedness against it, until the indebtedness should be fully paid; that Matthew should have the rents from the land in section 10, which should also apply on the indebtedness, and he agreed that, when it should be fully paid, he would convey the land to the plaintiffs. The petition also alleges that, at the time of, and before the sheriff's sale, Matthew also made an agreement to the same effect with Michael Maroney, who was then the only one of the plaintiffs who had attained his majority; that, pursuant to the said agreements, Matthew, on the first day of February, 1888, bid off the land, and applied the rents in his hands on the indebtedness, and took possession of the land, and had the income from it for a year before he was entitled to a sheriff's deed; that, when the sheriff's deed was taken, he applied the rent from the two hundred and forty acre tract for the preceding year, and the rents from the eighty acre tract for the preceding five years, and procured the remainder of the amount required, about two thousand dollars, by means of a mortgage on the land for which he received a deed. The petition further alleges that the rents and profits derived from the land have amounted to enough to pay all the indebtedness, but that Matthew Maroney failed to apply them upon it, and asks that the plaintiffs be decreed to be the owners of the land in section 24. The answer denies the averments of the petition which tend to show title to the land in controversy in the plaintiffs, denies that the plaintiffs are the owners of the tract in section 10, and avers that Matthew Maroney purchased the land in section 24 for himself, and that the income from the land has not been sufficient to pay the indebtedness on it and taxes and

improvements made. The defendants ask that their title to the land be quieted as against the plaintiffs, and it was so decreed by the district court.

I. The material facts established by the evidence, are substantially as follows: In June, 1875, the title to the land in controversy, was vested in M. E. Maroney, the wife of James Maroney. In March, 1876, it was conveyed to Bridget Ryan, and at the same time the tract in section 10 was conveyed to William McKinney. Wallace Francis had a judgment, which was rendered against M. E. Maroney, in October, 1874, and in November, 1876, Mary Boyle recovered judgment against James Maroney for the sum of one thousand six hundred dollars and costs. In November, 1882, the land in controversy was sold under execution issued on the Francis judgment, and in November of the next year, a sheriff's deed therefor was issued to Francis. Mrs. Boyle had commenced an action in 1877, to subject the land to the payment of her judgment, but it was not determined by the trial court until December, 1886, and while it was pending in that court, Francis was made a party to it. An appeal from the decree of the trial court was taken, and the cause was decided by this court in October, 1887. It was held that the land was subject to the Boyle judgment, and that the sale under the Francis judgment was ineffectual for the enforcement of any right Francis held against Mrs. Maroney, for the reason that she died before he issued his execution, and he had not taken the proper steps after her death to permit him to enforce his rights; and the action of the trial court, which set aside the sale and deed, was affirmed. *Boyle v. Maroney*, 73 Iowa, 70, (35 N. W. Rep. 145). The land was sold February 1, 1888, to Matthew Maroney, under an execution issued on the Boyle judgment, and on the ninth day of the

next February, a sheriff's deed therefor was issued to
him. He had been appointed administrator of the
estate of his brother, James, in October, 1885, but
never made any report. The probate records show
that the personal property of the estate amounted to
one hundred and fifty dollars. It is contended by the
appellee that it was the duty of Matthew Maroney, as
administrator, to take possession of the land which
belonged to the estate of his deceased brother, because
the heirs were not competent to take possession of it,
and that he was authorized by Bridget Ryan to occupy
that in controversy; that he did so under the agree-
ment with her, and had the rents and profits there-
from for a year before he received the sheriff's deed;
and that effect was thereby given to the agreement.
It is further insisted that, as it was the duty of Matthew,
as an administrator, to take charge of and protect the
property, he could not acquire any personal interest
adverse to those who were entitled to the estate; there-
fore, that the land in controversy should be decreed to
belong to the plaintiffs. It was found in the case of
*Boyle v. Maroney, supra,* that the conveyance of the land
to Bridget Ryan was fraudulent as against the credit-
ors of the grantors, and the land was subjected to the
payment of the judgment of Mrs. Boyle; but that decree
did not revest the title of the land in the Maroneys. It
merely permitted the sale of so much of it as was
required to satisfy the judgments, which were held to
be valid claims against it, and recognized the fact that
conveyances of that character, divested the grantors
of all interest in the property conveyed. The title to
the land remained in Bridget Ryan, as before, subject
to the liens to which it was made liable by the decree;
and the agreement with her did not impose any duties
upon Matthew, as administrator, and his relation to
the estate of his brother did not charge him with any
obligations with respect to the land. The claim that

a portion of the money paid for it by Matthew Maro-
ney belonged to the estate of his deceased brother, is
not sustained by the evidence. He bid for the land
the sum of two thousand nine hundred and ninety-six
dollars and forty-seven cents, and to obtain the money,
assigned the sheriff's certificate of sale to Richard
Campbell, who advanced the full amount required.
When the sheriff's deed was given, the certificate was
reassigned to Matthew, the deed was issued to him,
and he gave a mortgage on the land for the amount
he had borrowed. It is true that, before the sale, it
was verbally agreed between him and Anthony McKin-
ney, an uncle of the plaintiffs, that each of them would
furnish one thousand dollars towards the purchase of
the land, and that the remainder needed should be bor-
rowed, and the land be bought in the name of Matthew
for the benefit of the plaintiffs, and that he should hold
the title thereto, and have the rents from that, and
from the eighty-acre tract, in section 10, until they
should be sufficient to pay the purchase price, when
the land should become the property of the plaintiffs.
But McKinney did not furnish his share of the money,
the agreement was not carried out, and the purchase
made was not by virtue of it. Several witnesses tes-
tify to declarations of Matthew, to the effect that he
intended to save the land for the plaintiffs by pur-
chasing it, and that he was holding it for them. The
declarations so made, if competent, were not suf-
ficiently clear and specific to establish a right in favor
of the plaintiffs, but were in the nature of statements
of an intention, which was never carried into effect.

The alleged agreements, upon which the appel-
lants rely, were designed to create a trust in relation
to the land in controversy. They claim that
the evidence shows an express trust, and a
resulting or constructive trust. Section 1934,
of the Code, provides that "declarations, or creations

of trusts or powers, in relation to real estate, must be executed in the same manner as deeds of conveyance, but this does not apply to trusts resulting from the operation or construction of law." It is not competent, under this provision, to establish an express trust by parol. *Dunn v. Zwilling*, 94 Iowa, 233 (62 N. W. Rep. 746), and cases therein cited. The only evidence which tends to show an express trust was verbal, and hence incompetent; and such a trust is not established. Nor do we think a trust of any character is shown. It is clear, as already stated, that Matthew Maroney did not have any duty, as administrator, to perform in regard to the land, and that he did not use any money that belonged to the estate of his brother, in purchasing it. It appears that he had received about seventy dollars on account of that estate, and it is claimed that he received some money as rent for the tract in section ten; but the title to that land was conveyed to William McKinney, as heretofore shown, in the year 1876. He died about the year 1880, and the title to the land passed to his widow and a daughter. Anthony McKinney, the brother of William, testifies that he was authorized to take charge of that land, and that he continued in charge of it until the sale of the other land under the Boyle judgment; that, during that time, he had Matthew Maroney collect the rents for the plaintiffs; and that he was authorized to make that arrangement by the widow of his brother. What right to represent the daughter she had, is not shown. Much evidence has been submitted to show the value of the land in controversy, when sold, and the annual value of the use of that and the other tract, from which it appears that the value of the land in controversy, when sold, did not greatly exceed the amount, including nearly three hundred dollars required to satisfy tax liens, which Matthew Maroney paid for the land. He

improved both tracts at considerable cost, but did not treat them as the property of the plaintiffs. The rent derived from the tract in section 10, was less than one hundred dollars a year, and it is not shown that any of it was applied on the land in controversy. There is an absence of definite proof in regard to the source from which any of the money used on account of that land came, excepting the sum which was borrowed of Campbell. If any which belonged to the estate of James Maroney was appropriated to such use, the amount was small, and it has not been traced; but none of it was used in making the purchase, nor until after it was made.

Proof to establish a resulting trust must be clear and satisfactory, and show that the trust results at the instant the title to the property in relation to which a trust is claimed vests in the grantee. *Jones v. Storms*, 90 Iowa, 369 (57 N. W. Rep. 892); *Richardson v. Haney*, 76 Iowa, 102 (40 N. W. Rep. 115); *Koster v. Miller* (Ill.) (37 N. E. Rep. 46); *Van Buskirk v. Van Buskirk* (Ill.) (35 N. E. Rep. 383); 1 Perry, Trusts, section 133. Therefore, a resulting trust has not been shown, and there is no ground for holding the purchase and subequent conveyances to constitute a mortgage. It may be that Matthew Maroney was wrong in not filing reports and making an accounting as administrator, and in failing to perform his agreements; but, if so, he was liable therefor in a proper proceeding. No fraud in the transaction in question is shown, and no right to relief in this action, under the averments of the petition, is established. The decree of the district court appears to be right, and it is AFFIRMED.