JOSEPH CORNELISON, Appellant, v. PATTIE ROBERTS *et al.*

**Trusts:** CREATION: *Evidence.* In an action to establish a trust in certain land which had been devised by his deceased mother to his sister, plaintiff claimed that the consideration paid therefor was money received by decedent in trust for the benefit of herself, himself and such sister. It appeared that, that long prior to the purchase of the land in controversy, decedent had received from the respective estates of her deceased parents property and

money, a part of which was invested in land and conveyed to a trustee for the sole use of decedent during her life, and of her children at her death; that the consideration paid for the land in controversy was received by decedent from such trustee on a receipt, reciting that the fund therein referred to belonged to her, signed by herself, her husband, and also by plaintiff and defendants, all of whom thereby agreed that such fund should be invested for the use and benefit of decedent and her children; and that decedent subsequently received from such trustee, on a similar receipt, the procceds of the real estate which had been conveyed to him. *Held*, that the alleged trust character of such consideration was not established, as no part of the proceeds of the land conveyed in trust was traced into the land in question, and such conveyance created a trust in no other property, and the receipt referred to failed to show that anyone except decedent was interested in the fund which constituted such consideration.

RECEIPT NOT A DEED.   Under Revision, 1860, section 2213, providing that "declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance," a receipt for money which was subsequently invested in land created no trust therein, where not so executed, and where it did not refer to such land.

*Appeal from Ringgold District Court.*—HON. H. M. TOWNER, Judge.

FRIDAY, JANUARY 20, 1899.

ACTION in equity to establish a trust in land, the title to which was vested in Mrs. Ann Cornelison, now deceased, to set aside the will of the decedent which devised the land, for a partition of the land, and for general equitable relief. There was a hearing on the merits, and a judgment in favor of the defendants for costs. The plaintiff appeals.— *Affirmed.*

*Harvey & Parrish* for appellant.

*Henry & Spence* for appellees.

ROBINSON, C. J.—The plaintiff is the son, and the defendant Pattie Roberts is the daughter, of the decedent; and the defendant John Roberts is the husband of his co-defendant. The land in controversy consists of three tracts in Ringgold county, containing in the aggregate about

one hundred and sixty acres. Title thereto was conveyed to decedent on the thirty-first day of December, 1872, by a deed which was recorded in February, 1873. Mrs. Cornelison died testate, and by her will, which was probated in November, 1896, devised to the plaintiff about one-fourth of the land, and to Mrs. Roberts the remainder. The plaintiff contends that the consideration paid for the land was money received by the decedent in trust for the benefit of herself, the plaintiff, and Mrs. Roberts; that by the terms of the trust the decedent was required to invest the money in land, the use of which she was to have during her lifetime, and at her death the land was to descend to the plaintiff and Mrs. Roberts in equal shares. The facts upon which the claim of the plaintiff is based appear to be substantially as follows: Prior to the year 1872 Mrs. Cornelison, her husband, and their children, Joseph and Pattie, resided in the state of Kentucky. Joseph came to this state in the year 1871, and the other members of the family came in the year following. All made their home thereafter in this state; the father dying in the year 1891, and the mother a few years later. About the year 1847 the decedent received from her father's estate two negroes, which were afterwards sold for one thousand four hundred dollars to one thousand six hundred dollars; fifty-five acres of land, which were sold for five hundred dollars; and two hundred dollars to three hundred dollars in money. She also received from her mother's estate about one thousand dollars. When the father of decedent died, by the laws of Kentucky the title to personal property owned by and in the possession of women vested, by their marriage, in their husbands. That was true of slaves until the year 1842, when the legislature of the state subjected them to the condition which applied to the real estate of married women. The husband of the decedent was improvident and dissolute, and had no property excepting that obtained through his wife. At a time not definitely shown, but before the year 1858, a trusteeship was created. How it was

created does not fully appear. It was recognized by the proper court of the county in which the parties resided, although not shown to have been created by order of the court. A search of the court records failed to disclose the origin of the trust, but those made prior to the year 1858 are not indexed. It is shown, however, that the trusteeship was instituted to save what remained of Mrs. Cornelison's property, and to keep it from the possession and control of her husband. The first definite evidence of the trusteeship is in the form of a deed executed in the year 1857 by Tiberius B. Ballard "to Wm. Smith Collins as trustee for Ann Cornelison and Patsy Ann and Joseph Cornelison, her children." The deed recited a consideration of one thousand three hundred and eighty dollars, conveyed to the trustee a contract of land in Madison county, Kentucky, and contained the following: "To have and to hold said tract of land to the said Wm. Smith Collins in trust for the sole and separate use of Ann Cornelison, wife of Edward Cornelison, during her life, and, at her death, of her children, the said Patsy Ann and Joseph, and such other children as she may have living at her death, with all the right and privileges legally belonging, forever." In November, 1863, the decedent, her husband, and the trustee applied to the proper court for a removal of the trustee, and the substitution in his place of Joel Collins; and the substitution was made as prayed. The application and order of substitution refer to "funds" in the hands of the trustee. In September, 1872, after the decedent had moved to this state, Joel Collins filed in the proper court of Kentucky a petition which showed that he held as trustee the tract of land referred to, and about one thousand two hundred dollars in money. The petition stated that Mrs. Cornelison and her family had moved to this state, and that it would be for her benefit, and in accordance with her wishes, to sell the land, and invest the proceeds thereof, and the personal property in his hands, in a farm in some of the Western states, "the title to be taken and held according to the uses and restrictions of that

now held by him;" and authority to make the sale and investment proposed was asked. The court authorized the sale of the land, and ordered that "with the proceeds of such sale, and the cash funds in his hands belonging to Mrs. Cornelison, he [the trustee] is empowered to buy for her a tract of land in Kentucky or elsewhere, taking the title, to be held upon the same terms, uses, and restrictions as that now held by him; consulting, in making such purchase, as far as may be practicable, the wishes of Mrs. Cornelison not inconsistent with his trust." On the 18th day of March, 1873, the trustee filed in the case a receipt, signed by Mrs. Cornelison, her husband, and all the parties to this action, which contained the following: "Whereas, in the year 1857 W. S. Collins was made trustee of a fund belonging to Ann Cornelison, part of which was laid out in a tract of land bought of T. B. Ballard, and the balance was in cash, and afterwards, by a judgment of said court, Joel Collins was appointed trustee in place of W. S. Collins, and gave bond as such: "Now, we, Edward Cornelison, Anna Cornelison, and John Roberts, Pattie A. Roberts, formerly Pattie A. Cornelison, and Joseph Cornelison, their children, hereby acknowledge the payment to us of thirteen hundred dollars, all the funds in cash in the hands of said Joel Collins, and bind ourselves to see that the same is held and invested for the use and benefit of Ann Cornelison and her children. * * *" The receipt was dated "November, 1872." In the year 1876 the trustee sold the land in Kentucky for the sum of five hundred dollars, and in November, 1876, the persons who signed the first receipt and Mary M. Cornelison signed a receipt for that sum. In March, 1877, the trustee made his final report, and the trusteeship was brought to an end. Mrs. Cornelison received from the trustee, in addition to the one thousand three hundred dollars paid in November, 1872, and the five hundred dollars paid in 1876, various sums, to the amount of four hundred dollars. The one thousand three hundred dollars received in the year 1872, and a horse and wagon, and other property,

of the aggregate value of three hundred dollars, were paid for the land in controversy. Mrs. Cornelison occupied and held possession of the land from the time of its purchase until her death. The defendants deny the alleged trust, aver that the money and other property given for the land were owned by the decedent in her own right, and allege that the claim of the plaintiff is barred by the statute of limitations. The plaintiff contends that the trust character of the consideration paid for the land has been fully established, and that it should be decreed to have been held in trust for the benefit of himself and his sister after the death of his mother.

This is not a case where a claim is sought to be established against the estate of an insolvent trustee for trust funds traced into it, as in *Independent Dist. v. King,* 80 Iowa, 497, and *Plow Co. v. Lamp,* 80 Iowa, 722, and we first inquire whether a trust has been established. The trust deed to Collins executed in 1857 did not refer to any trust property, excepting the land which the deed conveyed, and no trust in any other property was thereby created. The court records refer in some instances to "funds" in the possession of the trustee, but do not disclose the source from which they were obtained, nor the character of the trust with which they were impressed. The petition of Joel Collins filed in September, 1872, alleged that he "was appointed trustee of Ann Cornelison, wife of Edward A. Cornelison, to hold the title to her real estate and personalty," and asks for the sale of the Kentucky land, and that the proceeds, "with the personality in his hands," be invested in a farm in some of the Western states, "the title to be taken and held according to the uses and restrictions of that now held by him"; but what those uses and restrictions were, is not shown. The order of the court granting the petition provided that the title of the land to be purchased should "be held upon the same terms, uses, and restrictions as that now held by him," but did not indicate anything of their character. It should be remembered in this connection that the

land which was conveyed to the trustee was not sold until the year 1876, and no part of the five hundred dollars for which it was sold has been traced into the land in question. On the contrary, that was purchased and paid for nearly four years before the Kentucky land was sold. Hence we are only concerned with the money from other sources which was received from the trustee. The receipt of November, 1872, may be regarded as an admission by those who signed it that "in the year 1857 W. S. Collins was made trustee of a fund belonging to Ann Cornelison," part of which was invested in the land conveyed to Collins; but it does not show that any one but the decedent was interested in the trust when it was created. The receipt further asknowledges that one thousand three hundred dollars were received by the signers, and in terms obligated them "to see that the same is held and invested for the use and benefit of Ann Cornelison and her children." The deed to Collins of 1857 provided that the land therein conveyed was to be held in trust for the sole and separate use of Ann Cornelison during her lifetime, "and at her death, of her children," but whether the money was held on the same condition can only be conjectured. The evidence shows clearly that all of the property in Kentucky which was subject to the trust was derived by Mrs. Cornelison from the estates of her parents, and that it was placed in the hands of the trustees, both of whom were her brothers, for the purpose of keeping it from her husband, and to retain it for her benefit. The evidence fails to show that any one but the decedent was interested in the money held in trust, prior to the giving of the receipt of 1872; and, if a trust be now established, it must be based upon that receipt, and what was done in pursuance of its requirements. It is not shown that the land in controversy is the subject of an express trust, for section 2213 of the Revision of 1860 provided that "declarations, or créations of trusts or powers, in relation to real estate, must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the

operation or construction of law." The receipt of 1872 was certainly not executed as required by that section, and does not refer to the land in question. *Maroney v. Maroney,* 97 Iowa, 711; *Dunn v. Zwilling,* 94 Iowa, 233; *Brown v. Barngrover,* 82 Iowa, 204; *Richardson v. Haney,* 76 Iowa, 101; *Andrew v. Concannon,* 76 Iowa, 251. A constructive trust is not shown, nor do we think a resulting trust has been proved, for the reason that the money invested in the land in question belonged exclusively, as we must conclude from the evidence, to Mrs. Cornelison, and it is not shown that the conveyance to her was designed to create a trust. See *Dunn v. Zwilling,* 94 Iowa, 233. The receipt of 1872 was an undertaking on the part of all who signed it (that is, Mrs. Cornelison, her husband, the plaintiff, and the defendants, that they would invest the one thousand three hundred dollars received "for the use and benefit of Ann Cornelison and her children;" but the terms of the trust, and the kind of property in which the money should be invested, were not specified. The obligation as to investment was upon all the signers, not upon the decedent alone. The receipt was prepared by an attorney in Kentucky for the use and protection of the trustee there, and to enable him to close the business of his trust. We are well satisfied that all the persons who signed the receipt regarded the money for which it was given as belonging exclusively to Mrs. Cornelison, and that it was thereafter so treated, probably for the reason that under the laws of this state she could hold both real and personal property in her own right and name, free from interference by her husband. That she so held the land is denied by the appellant, who claims that he did not know that the deed to his mother was absolute, and not in trust, until the year 1887; and several witnesses testify to conversations with the mother in which she said that the land was to belong to her during her lifetime, and was then to go to her children. But the preponderance of the evidence shows that the plaintiff knew that his mother claimed to be the unqualified owner of the land from about the time the deed was executed until her

death,—a period of more than twenty years.    Therefore, if at any time he had a valid interest in the land inconsistent with the claim made by his mother, his interest was barred by the statute of limitations before her death.    The statements she made to her acquaintances were consistent with her absolute ownership of the land.    The record does not disclose any equitable reason for subjecting the land in controversy to the alleged trust.    We conclude that the judgment of the district court is right, and it is AFFIRMED.