GEORGE F. MATT, et al., Appellants, v. WILLIAM R. MATT and wife, Appellees. (And two other cases against the same defendants consolidated.)

**Trusts:** EVIDENCE. In this suit to impress a trust upon land held by defendant the evidence is reviewed and held insufficient to establish the trust agreement relied upon by the intervener.

**Same:** MORTGAGE PROVISIONS: ENDORSEMENT ON NOTES: EFFECT. Where certain provisions are expressed in a mortgage the fact that the same appear as endorsements on the back of notes secured by the mortgage neither adds nor detracts to the force of the provisions, as between the original parties; as where the mortgage provided that the mortgagor should not be liable beyond the valuation of the land. But as the notes in this instance were

placed with third parties as collateral security the indorsement was proper because conveying notice of the mortgage provisions to the holders.

Same: PRIOR NEGOTIATIONS: EVIDENCE: NOTICE. The provisions of 3 a mortgage as finally executed can not be affected by a letter written during negotiations leading up to its execution: Nor can parties interested complain of want of notice of the provisions contained in a mortgage duly recorded.

Same: ACTION TO ESTABLISH A TRUST: ESTOPPEL. Where land was 4 conveyed to a son, reserving a life estate to the grantors, with a mortgage back for the benefit of his brothers and sisters, and thereafter the surviving mother brought suit to set aside the transaction and recover her distributive share, to which the beneficiaries were made parties, but none of whom questioned the grantee's ownership and some of them made affidavit in support of his title, they could not thereafter claim that he held title subject to any trust in their favor different from that expressed in the mortgage.

Reformation of instruments: CONSTRUCTIVE TRUSTS: EVIDENCE. The 5. evidence in this case is held insufficient to authorize reformation of the writings, so as to make an equal distribution of the proceeds of the land held by defendant among his brothers and sisters; or to establish a constructive trust in their favor on the theory of fraud, which must be by clear and satisfactory evidence.

*Appeal from Boone District Court.*—HON. CHARLES E. ALBROOK, JUDGE.

FRIDAY, SEPTEMBER 27, 1912.

SUIT in equity to impress a trust upon the title or estate held by the defendant, Wm. R. Matt. There was a decree for the defendant, and all other parties appeal.— *Affirmed.*

*D. G. Baker* and *Whitaker & Snell,* for appellants.

*Goodykoontz & Mahoney* and *Stevens & Fry,* for appellees.

EVANS, J.—Three separate actions were originally instituted against the defendant. In two of these actions the plaintiffs comprise the five living brothers of the defendant. In the third action the plaintiff therein is the mother of the defendant. These actions were all consolidated. Thereafter certain interveners appeared and joined with the plaintiffs. These interveners comprise a sister of the defendant, Mary Heuberger, and the widow and children of the deceased brother, Charles. At the close of the evidence in the court below, the action brought by the mother as plaintiff was dismissed. We have before us, therefore, only the controversies between the parties in the two remaining actions as consolidated.

The transactions out of which the controversy has arisen had their origin in March, 1886. The plaintiffs and defendants are all sons of Silas Matt, formerly of Boone county. The children of Silas consisted of seven sons and one daughter, as follows: George, Francis (known as Frank), James, Joseph, Arnold F. (known as Fred), William R., Charles, and Mary. From the finding of the trial court we quote the following history as being in accord with the record:

I find as the history of the matters involved: That some time in the 60's Silas F. Matt and his wife, Marie A. Matt, settled in Boone county, Iowa, and as a result of their united effort became possessed of a family of eight children and of the land in plaintiff's petition described. That in the year 1886 Silas F. Matt, then being past eighty-four years of age and being somewhat out of health, and his wife being well advanced in years and not of vigorous physical condition, and the said Silas F. Matt having become somewhat involved financially by being induced to sign notes for two of his sons, and thus becoming somewhat obligated in larger amounts to pay these sums, concluded that it was best to put his property into such shape that he and his wife might be sure of their life support, and yet something be left for certain members of the family after the departure from this life of himself and

his wife, Marie A. Matt. He accordingly secured the services of a practicing lawyer of good standing and in good repute to aid him in thus adjusting his property rights and titles. Accordingly, in the month of March of said year, the said lawyer, being Mr. Jordan of Boone, did prepare the papers decided upon, and resorted to the home of Silas F. Matt in Boone, where he met Mrs. Heuberger, the intervener herein, and a deed of conveyance was made and executed by Silas F. Matt and wife conveying the real property described in plaintiff's petition to the said Mrs. Heuberger, she being the only daughter of the said Silas F. Matt and Marie A. Matt, reserving to Silas F. Matt and Marie A. Matt the life use to each of them of said property, and with no other limitations. At the same time, as a part of the same transaction, the said Mrs. Heuberger made and delivered to her father, Silas F. Matt, a certain mortgage incumbering her title thus obtained for the sum of $6,666.66, and in favor of William R. Matt, Charles D. Matt, Francis S. Matt, George Matt, and James Matt, obligating the said Mary A. Heuberger to pay to each of the parties above named $1,333.33 on or before two years after the death of Silas F. Matt and Marie A. Matt. The said deed and mortgage were duly filed for record in the office of the recorder in and for Boone county, Iowa, on the 5th day of April, 1886.

Subsequently Mrs. Heuberger, with her husband, removed to California, and some of the parties interested in this property and Silas F. Matt became dissatisfied with the situation and the absence of Mrs. Heuberger from the immediate vicinity of the real property in question, and such negotiations were had that the said Mrs. Heuberger and her husband, John Heuberger, conveyed their interest in the land in question to William R. Matt, the defendant in this proceeding, by warranty deed, with the same reservation in the instrument as was inserted in the deed originally executed and delivered by Silas F. Matt and Marie A. Matt to Mary Heuberger. The mortgage executed by Mrs. Heuberger was canceled of record by the mortgagees. A part of the land was sold by William R. Matt and Silas F. Matt to Frank Adix, and a part by the same parties to Andrew Nelson, and the proceeds of those sales was used to discharge obligations of Silas F. Matt and

Marie A. Matt, Fred Matt, and another son, which obliga-
tions the said Silas F. Matt was held and bound to pay.
A mortgage was then executed by William R. Matt and
wife for sum of $5,000 payable to Mary A. Heuberger,
Charles D. Matt, Francis S. Matt, George F. Matt, and
James F. Matt, securing to each of the parties named $1,000
to be paid on or before two years after the death of Silas
F. Matt and Marie A. Matt.  There was omitted from this
mortgage that was included in the Heuberger mortgage the
W. ½ of the N. W. ¼ of section 21, being the eighty
acres sold to Adix and Nelson.  These instruments of con-
veyance were duly recorded in the recorder's office in Boone
county, Iowa, on the 19th day of May, 1887, as were the
various releases releasing the Heuberger mortgage to her
brothers.  Silas F. Matt died in the spring of 1888.

In 1899 Marie A. Matt commenced her action in the
district court of Boone county, Iowa, against all the parties
who are now parties to this action, alleging that the deed to
Mary A. Heuberger was procured by fraud, and averred
that neither she nor Silas F. Matt knew that the instrument
was in fact a deed when they signed it.  This suit, thus
commenced, was subsequently compromised, and Marie A.
Matt quitclaimed her interest in the real property in con-
troversy in that proceeding, being the same as in this, to
the defendant in this suit, William R. Matt.  The petition
in that proceeding was duly sworn to by Marie A. Matt.
In 1901 the defendant sold to one Jordan the thirty-four
acres described in the previous conveyances, and conveyed
the same by warranty deed, which deed was duly recorded
in the office of the recorder of Boone county, Iowa, on
the 7th day of June, 1901.  On the 3d day of February,
1910, the plaintiffs filed in this court several petitions
against the defendant, charging that the intervener had by
means of getting Silas F. Matt and Marie A. Matt under
the influence of intoxicating liquors fraudulently procured
the conveyance to be made to her by Silas F. Matt and
Marie A. Matt hereinbefore referred to; that the defendant
in this suit was employed soon after by Silas F. Matt and
Marie A. Matt, and all their children save the defendant
and the intervener, as their agent to get a reconveyance of
said lands and protect their interest therein; that the de-
fendant fraudulently did secure to himself the conveyance

made by said Mrs. Heuberger to him, above referred to, in violation of said agreement and arrangement so made. On the 13th day of April, 1910 the plaintiffs filed their amended and substituted petition in this case, declaring that the defendant held the lands in dispute in trust, and basing their claim upon an alleged written agreement executed by the intervener between herself, Mary A. Heuberger, and her father at the time the deed was executed by her father to her in 1886. This is the first intimation of record of any such claim being made.

It is proven, and, in fact, not in dispute, that at that time, in March, 1886, Silas F. Matt was about eighty-four years old, in poor health, and quite seriously crowded for means to meet his obligations, and in such sore distress that he employed an attorney to extricate him, if possible. Marie A. Matt, his wife, was in feeble health, and quite advanced in years as well. The land owned by them, being about 354 acres, was worth about $20 an acre, possibly a little more and possibly a little less. The prospects of life for Silas F. Matt and Marie A. Matt were not flattering, a demise was likely to come at any time, and, in fact, in less than two years Silas F. Matt passed away. Now, when the deal was closed, Mary A. Heuberger had absolute title in fee to this land, and had given back a mortgage for $6,666.66 to be paid in two years after the said Silas and Marie Matt passed away; Mary's title, however, being subject to the life estate of Silas and Marie. The undertaking of Mary A. Heuberger was absolute. She agreed to pay each of the parties named the sum therein expressed at a time sure to come, but having no fixed date.

This statement should be supplemented with a few details. To that end, we quote from appellee's statement of facts as follows:

On March 26, 1886, Silas Matt and his wife were living in their homestead property in Boone. This property was owned by Silas Matt, but it is not involved in the case at bar. All of the children were grown and married and living away from the parental home. During the seven or eight years preceding the transaction in question Silas Matt had lost considerable money by reason of being compelled

to pay debts for some of his children, other than the
appellee Wm. R. Matt, particularly Arnold F. Matt and
Joseph A. Matt.   Joseph A. Matt had left home when he
was eighteen years of age, being eleven years before the
date in question, and his mother never knew where he was
until he visited them in 1909.   From the time he left
home up to 1908 his family did not know where he was,
until Frank found out twelve years ago.   The appellee
Wm. R. Matt was at that time living near Story City, about
twenty miles from Boone and some twelve miles from the
farm in controversy.   The appellant George F. Matt was
living in Nebraska, and the other sons, except Joseph A.,
were living in or around Boone, and the daughter, Mary
A. Heuberger, was living in Boone.   Silas Matt consulted
an attorney as to what was best to do with the property
in view of his age and situation, and the result was that
on the evening of March 26, 1886, Mr. R. F. Jordan, the
attorney in question, went to the home of Silas Matt, and
while he was there the transaction took place that finally
resulted in this litigation.   As to what took place there,
the admitted facts are:   That on that evening Silas Matt
and his wife executed a warranty deed covering the land
above described, consisting of 354 acres, to Mary A. Heu-
berger, being a warranty deed in the usual and ordinary
form, except the following clause therein:  'Said grantors,
however, are to retain and be entitled to the use, possession
and control of said premises during the term of their
natural life or the life of the survivor of either of them,
nothing in this deed shall be construed to impair said
rights.'   The ' expressed consideration of the deed was
$8,000 and love and affection.   At the same time Mary
Heuberger gave a mortgage covering the premises for the
sum of $6,666.66 running to the appellee Wm. R. and
appellants George, Frank, and James, and Charles D.
(now deceased), being for $1,333.33 for each, due two
years after the death of Silas and Marie A. Matt, with
interest after maturity, at six percent.   The mortgage
recites:   'This mortgage is given for a portion of the pur-
chase price of said premises.'   There were present at the
time Mary Heuberger, one Mrs. Girth, Silas Matt and wife,
Marie A. Matt, R. F. Jordan, and one Etta Slates, then
a child.   Of these Silas Matt died in 1888 and F. R.

Jordan died in 1901, and only Mrs. Marie A. Matt and Mary A. Heuberger appeared as witnesses in this case.

In addition to these admitted facts, appellants claim that as a part of the same transaction a trust agreement was executed by Mary A. Heuberger. Mary A. Heuberger is the only party who so testified in the case. . . . The next transfer of title was made by Mary A. Heuberger to the appellee by warranty deed of date April 8, 1887. This warranty deed was in the usual and ordinary form, except that it was made subject to a life estate in said premises to Silas Matt and Marie A. Matt during their lives and the life of the survivor. This deed was executed in California, with the expressed consideration of $8,000, and was recorded in the office of the recorder of Boone county, Iowa, on the 19th day of May, 1887. On April 25, 1887, the appellee and his wife executed a mortgage covering all of the premises except eighty acres that will be hereafter referred to, said mortgage running to Mary A. Heuberger, Charles D. Matt, Frank S. Matt, George F. Matt, and James L. Matt, for the sum of $5,000, and said mortgage refers to notes aggregating $1,000 each, for each of the five mortgages above mentioned, said notes payable two years after the death of Silas and Marie A. Matt with interest at 6 percent after maturity. The mortgage contains this further condition: 'I agree to be bound on the payment of the notes above secured only to the sum the land may bring on sale, the consideration of these notes is for the purchase price of the land.' This mortgage was recorded in the office of the recorder of Boone county, Iowa, on May 19, 1887. At the same time Wm. R. Matt executed the notes referred to in the mortgage, all of the form of Exhibit C, and each with indorsement on the back, which indorsements are all identical with that set out on the back of Exhibit C, except that on the note of Charles D. Matt the indorsement is 'for more or less.' On May 18, 1887, Wm. R. Matt and wife and Silas Matt and wife executed separate warranty deeds covering forty acres of land, conveyed by Mary Heuberger to Wm. R. Matt, but not included in the mortgage, to Andrew Nelson. The expressed consideration of each deed was $750. On the same day— i. e., May 18, 1887—Wm. R. Matt and wife and Silas Matt and wife executed separate warranty deeds covering

another forty acres of land included in the deed by Mary A. Heuberger to Wm. R. Matt, but not included in the mortgage to Franz Adix. The expressed consideration of each deed was $750. Seven hundred and fifty dollars was the total price paid by Mr. Nelson for the forty acres he purchased, and $750 was the total price paid by Mr. Adix for the forty acres he purchased. These deeds were likewise recorded in the office of the recorder of Boone county, Iowa, on May 19, 1887. The mortgage given by Mary Heuberger to her brothers as above referred to was released on the margin of the record April 25, 1887, by W. R. Matt, Frank S. Matt, and C. D. Matt, and George F. Matt and James L. Matt released said mortgage by written release, dated April 30, 1887, and filed for record May 19, 1887. When the transfer was made from Mary to Wm. R., George and James were living at the same place in Nebraska, Mary in California, Joseph on his farm near Story City, Iowa, Charles was living in Hamilton county, near Jewell Junction, Iowa, and Frank and Arnold F. were living in or near Boone. Arnold F. is generally referred to in the testimony as Fred. The indorsement written upon the back of the notes was as follows: 'The consideration of this note is a 1-6 interest in certain land in Boone county, Iowa, formerly owned by Silas Matt. Should said land sell for $6,000.00 or more than this note is to be paid in full, but should said land sell for less than $6,000.00 then this note should be good for only 1-6 of what the land brings. This is in accordance with a contract between these parties of date April 25, 1887. W. R. Matt.' This indorsement upon the note to George Matt was written by Attorney Jordan at 'the time of the execution of the papers. The indorsements upon the other notes were written later. The notes to Mary and James were delivered to Lafe Zimbleman as agent. The indorsements upon these notes were in his handwriting. The indorsement on the note to Frank was written by the cashier of a bank which received the note from Frank as collateral security. The indorsement on the back of the note to Charles varies in form from the others. It can not be determined from the evidence in this record who wrote it, nor under what circumstances it was written. Charles died testate in 1890, and bequeathed the '$1,000' note to his

wife and children. Silas died in 1888, leaving his widow, who has survived him to the present time.

The following quotation from appellant's brief is a concise statement of the issues as made by the pleadings:

The plaintiffs and the interveners allege they are five brothers, the heirs of a deceased brother, and the one sister of the defendant W. R. Matt; that their father and ancestor was Silas Matt; that March 26, 1886, said Silas Matt deeded to his only daughter, Mary A. Heuberger, over a half section of land owned by him in Boone county, Iowa; that said daughter, Mary A. Heuberger, took title to said land as trustee only for herself and her seven brothers, being then all the children of said Silas Matt, and subject to the life estate in said land of both the father, Silas Matt, and the mother, Marie A. Matt; that said trust was evidenced by a mortgage given back by the daughter, securing certain notes payable to certain brothers upon the death of the father and mother, and by an agreement in writing executed at the same time between herself and her father, by which the said daughter should hold the legal title to said premises, subject to a life use of the same during the natural life of both the father and mother, and two years after the death of the survivor then said daughter should sell said land, and, after paying said mortgage and after deducting the agreed amount for herself, divide the balance of the proceeds equally between her brothers and herself; that afterward the daughter, Mary A. Heuberger, having moved from Boone, Iowa, to California, it was arranged between said father and mother and said sons and daughter, by which the mortgage given by the daughter to her brothers was satisfied, her title to the land transferred by deed to her brother, W. R. Matt, a mortgage and notes given back by him to her and the other brothers, and by which the brother W. R. Matt was to hold title to the land only in the way and manner that the sister had title therein; that no money consideration was ever given or received for the deed from the father and mother to the daughter Mary A. Heuberger, nor for the deed from her to the brother W. R. Matt; that these notes secured by the mortgage given by W. R. Matt to his brothers and sister were not delivered until a long time after they were executed,

and until about the time W. R. Matt commenced to assert absolute title in himself to said premises; that the defendants now claim that said W. R. Matt holds absolute title in said premises subject only to the mortgage securing payment to four of his brothers and his one sister. The defendants admit the execution of the written instrument as alleged by the plaintiffs, except the contract between the father, Silas Matt, and the daughter, Mary A. Heuberger, made contemporaneous with the deed to her and mortgage given by her. They deny that W. R. Matt is holding the land in trust, but allege that he is the absolute owner of the same, allege that his brothers and sisters are barred by their own laches in now making claim to the land, and also barred by the statute of limitation.

It will be seen from the foregoing that the appellants contend for present equality in the distribution of the former estate of their ancestor, Silas Matt; whereas the appellee contends that the distribution of the estate was in legal effect accomplished by the instruments in question, and subject only to the conditions and contingencies specified in such instruments; that he thereby became absolute owner of the real estate, subject only to the burdens imposed and assumed by the instruments. That an arrangement such as is contended for by appellant would have been reasonable and equitable seems to us quite clear, and this is the strong point in appellant's case. The court would willingly reach such a result if the evidence fairly warranted it. On the other hand, there are other equities as will appear from the later discussion.

I. The first question which confronts us for determination is one of fact. Was there a trust agreement executed by Mary Heuberger at the time that she received 1. TRUSTS: the deed from her father substantially
evidence. as contended by her in her testimony? No such an agreement was ever recorded, although the deed and mortgage were both recorded. No such paper was sent to Wm. R., the appellee, when she

conveyed the premises to him. No reference was ever made to it in the correspondence. No one of the interested parties claim to have ever heard of it from Mary or from any one else until after the beginning of these suits. Would we be warranted, therefore, in finding affirmatively this fact upon the evidence of Mary alone? There are several considerations prominent in the record which satisfy us that we can not properly do so. The evidence of Mary on this question was all received over appropriate objections as to its competency and as to her competency as a witness under section 4604. We pass by the question thus presented. Giving to such evidence the fullest consideration to which it could be entitled, there is much in the record and in the undisputed circumstances to contradict it. Some months before the trial the deposition of this witness was taken on behalf of the appellants. She appeared in person, however, at the trial, and testified therein, so that her deposition was not used by the appellants. Portions of such deposition, however, were introduced in evidence by the appellee by way of impeaching her testimony upon the trial. Without going into details, it is sufficient to say that there is manifest inconsistency between her testimony and her former deposition upon very material points. Reading the two together, we can not avoid the conclusion that her testimony in both instances was based upon her conception of the just rights of the parties rather than on her actual recollection of facts. The papers in the transaction were prepared by an attorney of skill and reputation. If such an agreement as claimed was executed, no reason is apparent why it should not have been recorded with the deed and the mortgage. Nor is there any reason apparent why the mortgage and note should have been executed at all if such trust agreement was executed. The agreement as testified to by this witness would be quite inconsistent with the mortgage and notes. The beneficiaries named therein would become thereby the beneficial owners of the land.

And yet by the undisputed mortgage they became mort-gagees of the same land, which, under the alleged agreement, they owned. In other words, such alleged agreement and such mortgage would be contradictory, and it would be impossible to construe them so as to give effect to both. This consideration greatly emphasizes our reluctance to find such an important fact upon the testimony of an interested witness as to a transaction had twenty-five years ago, and as to an instrument which she had not seen since the time of its alleged execution. It may be quite true that the witness has testified honestly to her understanding of the net result and effect of the papers executed. But if the instruments which were indisputably executed could be overturned by the mere general recollection of an interested witness, under such circumstances there would be but little security in the solemn execution and acknowledgment and recording of instruments defining the rights of parties thereto. It is our conclusion that the trial court properly found against the appellants on the question of fact at this point.

II. It is not claimed that any formal trust agreement was ever executed by the appellee other than the mortgage and notes hereinbefore referred to. The contention of

2. SAME: mortgage provisions: endorsement on notes: effect.

appellants is that the appellee took the title from his sister Mary, burdened in the same manner as she had it, and that if she held it subject to a trust agreement, he therefore held it in like manner. The conclusion reached by us in the foregoing paragraph renders it unnecessary that we give further consideration to the effect upon appellee of such alleged trust agreement executed by Mary.

Referring now to the mortgage and notes executed by appellee, they purport to define the rights of the parties clearly and without ambiguity. By the terms of the mortgage the appellee did not bind himself beyond the valuation of the mortgaged land. This proviso is contained in

the body of the mortgage itself. The fact that the same proviso is contained in the form of an indorsement upon the back of the notes neither adds anything to the appelle's case nor takes anything from it. Some stress is laid in argument by appellants upon the alleged fact that some of these indorsements were not made until long after the deed and mortgage were made. As between the parties thereto, it was not material that they should be made at all. The proviso in the mortgage was all sufficient. These notes were used by some of the payees as collateral security for loans. For such purpose, it was eminently proper that such indorsement should appear upon the back of the notes as notice to indorsees. And this probably accounts for the fact that some of these indorsements appear in the handwriting of agents or clerks who held them as collateral. The indorsements as actually made are entirely consistent with the proviso in the body of the mortgage. They do not, therefore, impeach the title of the appellee in any sense, nor is the fact that the indorsements were not made upon the notes upon the date thereof available to the appellants as a circumstance of any significance.

III.   On April 21, 1887, which was a few days before the execution of the mortgage by appellee, he wrote a letter to his brother George, known in the record as Ex-

3. Same: prior negotiations: evidence: notice.

hibit G, which contained the following: "Now youse all hold a noat of ten hundred dolers providing you can sell for 25 dolers an aker youse will all haf to gree to take more or less." Considerable stress is laid by appellant upon this expression, "more or less." The undoubted tendency of this expression is in support of appellant's theory. But it is only a circumstance, and is clearly insufficient to overcome the effect of the formal instruments as finally executed. Appellants contend that they had no notice of the form of the mortgage. But the mortgage was on record, and its contents were available to them. The notes also came into the hands

of some of them and into the hands of the agents of others, and were so held for many years prior to the institution of this suit.

IV. There are other considerations which are quite insurmountable for the appellants. In 1909 the surviving widow brought an action against all her children to set aside the transaction, and to recover her distributive share in this real estate, alleging fraud on the part of the daughter and others in obtaining the conveyance from the husband and father. All the beneficiaries of the mortgage were named as parties defendant, but some of the nonresidents were not served with notice. Wm. R. Matt, the appellee, herein, appeared in such suit. He compromised the case with his mother. This was done with the consent and aid of the resident children. A written stipulation of settlement was entered into and filed in the case, both parties being represented by counsel. The mother ·quitclaimed to Wm. R. all her interest in the land. Wm. R. on his part paid his mother $800 and undertook to pay her an annuity of $450 a year as long as she lived, and quitclaimed to her all his interest in the homestead property wherein she lived in the city of Boone. The other resident heirs joined in the same quitclaim deed. In that case the mother had charged in her petition that Wm. R. was claiming to be the owner .of the property, and such allegation was conceded by Wm. R. None of the children at that time raised any question as to Wm. R.'s rights to claim ownership of the property. Under his claim of ownership, he has expended substantial amounts in improvements on the place. That all the appellants had general knowledge of these facts and some of them had specific knowledge thereof is manifest from the record. Frank and James both joined in the quitclaim deed to the mother, in pursuance of the stipulation of settlement. Fred also joined in such quitclaim deed. It will be noted that Joe and Fred were not included among

*4. SAME: action to establish a trust: estoppel.*

the beneficiaries of the mortgage. They were the two sons for whom the father had made considerable payments, and on whose account he had become financially involved. Prior to the bringing of this suit, each had made an affidavit in support of appellee's title, wherein each affiant disclosed his knowledge of the transaction had in 1887, whereby he was excluded from participation, and declared his satisfaction therewith. The affidavit on the part of Fred was made about the same time of the settlement with the mother. That on the part of Joe was made about three months before the beginning of this suit. Such affidavits were entirely inconsistent with the present attitude of such affiants as plaintiffs and appellants herein. They do not show any adequate explanation of such affidavits. When the two forty-acre tracts were sold in 1887, the entire proceeds were used by attorney Jordan in the payment of claims against the father. Some of these claims included debts of Frank and James. Charles. D. died testate in 1890, as already stated. His will indicated no claim of interest in his father's estate except the ownership of the "$1,000 note."

Notwithstanding the facts herein stated, the original petitions filed in this case charged fraud against Wm. R. in the sale of the tracts to Nelson and Adix, and prayed an accounting for the proceeds of such sale. The history of the pleadings in the case discloses much inconsistency in the contentions of the appellants. Originally, they charged fraud on the part of Mary in the first transaction. Later she joined them as an intervening plaintiff, and substituted petitions were filed. It was at this point that it was first claimed that a trust agreement had been executed by Mary. We would not lay too much stress upon such inconsistency. It is not unusual that very important facts come to the knowledge of counsel for the first time in the later developments of a case. Clients often fail to disclose facts to their counsel for want of perception of their importance. But

the inconsistency of position of the appellants is nevertheless a proper circumstance to be considered in viewing the testimony as a whole.

Looking at the situation of the parties as it was at the time of the execution of the instruments, it is evident that the arrangement was made upon the basis of a prospective value of $25 an acre on the property, and on that basis the arrangement provided substantial equality between the six children. But it gave to the five mortgagees only a lien upon the land, and not an estate in it. The proviso in the mortgage was manifestly for the protection of the mortgagor. It was entirely natural. He went into the arrangement reluctantly. The land was not in fact worth $25 an acre at the time the arrangement was made. The mortgagor was within his rights in insisting upon protection at this point. That a further proviso could have been made for the benefit of the mortgagees in case of increased valuation beyond $25 an acre is, of course, clear. But such proviso was not made. It was not proposed nor considered. An increase of valuation beyond $25 an acre does not appear to have been considered as probable. We are bound, therefore, to take the instruments as written and to give effect to them accordingly.

V. At the close of the evidence, the plaintiffs amended their pleading to conform to the evidence, and prayed that the various instruments introduced in evidence, including the warranty deed and the mortgage and the letter (Exhibit G) and the indorsement on the back of the note to Charles, be so reformed and construed so as to provide for an equal distribution of the proceeds of the farm when sold. What we have already said is quite decisive at this point also. There is no evidence of a mistake. To reform the contract would be simply to ignore it. The record does not warrant a finding that there was any contract other or different from that expressed in the writing.

5. REFORMATION
OF INSTRU-
MENTS: con-
structive
trusts:
evidence.

The theory of constructive trust is also urged by the appellants, but this is predicated upon the theory of fraudulent conduct on the part of Wm. R. The record does not warrant a finding to that effect. The sum of the situation is that the defendant holds his title by a warranty deed, plain, and unequivocal in its terms. Such deed is supported by abundant consideration in a legal sense. We can not treat such an instrument lightly. In order to find a constructive or resulting trust in such a case, the evidence must be clear and satisfactory. It has been said that the evidence in such a case must be "practically overwhelming." *Murphy v. Hanscome,* 76 Iowa, 192; *Parker v. Pierce,* 16 Iowa, 227; *Maroney v. Maroney,* 97 Iowa, 711; *Andrew v. Andrew,* 114 Iowa, 524; *Acker v. Priest,* 92 Iowa, 610; *Luckhart v. Luckhart,* 120 Iowa, 248; *Willis v. Robertson,* 121 Iowa, 380.

We hardly need to say that there is much incompetent testimony in the record, involving personal transactions with the deceased grantor. In view of our conclusions, we need not pass upon defendant's objection, and we will not attempt to separate the competent from the incompetent. Disregarding the incompetency, we are united in the conclusion that the rights of the parties are fixed by the terms of the written instruments. A fair construction of these instruments will not permit us to impress a trust upon appellee's title.

The decree entered below must therefore be—*Affirmed.*